# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| EARNEST JENKINS, ) | |
| Plaintiff, ) | |
| v. ) | 7:18-cv-00861-LSC |
| ADVANCED CORRECTIONAL HEALTHCARE, INC., ) | |
| Defendant. ) | |

## MEMORANDUM OF OPINION

Plaintiff Earnest Jenkins has brought this action against Advanced Correctional Healthcare, Inc. ("ACH"), asserting both federal and state-law claims based on medical treatment he received while an inmate in Greene County Jail. Before the Court are Defendant's motion for summary judgment (doc. 25) and its motion to strike an exhibit submitted by Plaintiff (doc. 31). The motions have been briefed and are ripe for review.[1] For the reasons stated below, Defendant's motion for summary judgment (doc. 25) is due to be granted in part, and its motion to strike

---

[1] Plaintiff initially failed to file a response to Defendant's motion for summary judgment within the time allotted by this Court's Uniform Initial Order. (Doc. 4.) However, in the interest of hearing both sides, this Court permitted Plaintiff to file a response out of time. (Doc. 29.) Plaintiff has since filed a late response (doc. 30), and Defendant in turn has filed a reply (doc. 32).

(doc. 31) is due to be denied as moot.

I. BACKGROUND[2]

Defendant is a private corporation that has contracted with the Greene County Jail to provide medical attention and treatment to inmates in the Greene County Jail custody. (Docs. 30 & 32.) It is responsible for providing for and treating the serious medical needs of Green County Jail inmates. (*Id.*)

On June 1, 2016, Plaintiff was booked into the Greene County Jail on a charge of domestic abuse. (Def's Ex. A at 9, 19.) Upon entering the facility, he did not go through any medical history intake process. (*Id.* at 108.)[3] Plaintiff had never served time in the Greene County Jail before this date, and he is not familiar with the experiences of other inmates who served time there. (*Id.* at 21–22.)

Plaintiff has a lengthy medical history beginning in 1989 when he fell from the back of a pickup truck and struck his head when he was fourteen years old. (*Id.* at 33–

---

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . ." (internal quotations omitted)).

[3] Plaintiff has previously served time in the Birmingham Municipal Jail and Tuscaloosa County Jail. (Def's Ex. A at 109–10.) In both facilities, he went through a formal medical history intake process or received an initial questionnaire that asked him of his serious medical needs. (*Id.*)

34.) He had surgery for injuries sustained in that accident, and he has suffered migraine headaches since. (*Id.* at 34–35.) More recently, Plaintiff has been diagnosed with hypertension. (Doc. 33 at 1.) Prior to being admitted to the Greene County Jail, he was taking his prescribed blood pressure medication once per day to treat this condition. (Def's Ex. A at 37.)

Upon entering the Greene County Jail, Plaintiff personally informed a guard of his hypertension and need for his prescribed blood pressure medication. (*Id.* at 111–12.) The guard responded, "You'll see the nurse." (*Id.* at 112.) Plaintiff also notified other guards on duty that he needed his medication. (*Id.* at 113.) Plaintiff did not see a nurse until the next day, June 2, 2016. (*Id.* at 114.)

On June 2, 2016, Plaintiff was seen by a nurse employed by Defendant at the Greene County Jail. (*Id.* at 75.) He informed the nurse of his hypertension and prescribed blood pressure medication. (*Id.*) However, the nurse responded that the facility did not have that medication. (*Id.*)

From June 2, 2016, through June 8, 2016, Plaintiff continued to ask each day for his blood pressure medication. (*Id.* at 80.) During that time, he saw the nurse handing out medication to other inmates each day. (*Id.*)

On the night of June 8, 2016, Plaintiff began feeling "real sick, dizzy, [and] nause[ous]" while in his cell. (*Id.* at 83.) He used the intercom to inform correctional

officer Athelena Jordan of his ill health. (*Id.*) Shortly after, correctional officer Blayton McMullen entered Plaintiff's cell and checked his blood pressure. (*Id.*) The reading showed Plaintiff's blood pressure as 178 over 100. (*Id.*) He later vomited throughout the night and could not sleep. (*Id.* at 85.) Plaintiff is not aware of whether the nurse was on duty that night. (*Id.* at 84.)

On the morning of June 9, 2016, Plaintiff left his cell and found the nurse passing out medication downstairs. (*Id.* at 85.) He informed the nurse of his ill health, and the nurse proceeded to take his blood pressure. (*Id.*) Again, the examination revealed that Plaintiff's blood pressure was high. (*Id.*) The nurse returned sometime later and gave Plaintiff medication to treat his nausea and blood pressure. (*Id.*) The nurse then told Plaintiff to return to his cell and lie down. (*Id.*)[4] Plaintiff returned to his cell as instructed to lie down. (*Id.* at 86.)[5] He continued to vomit during that time. (*Id.*) At around noon, Plaintiff grew thirsty and left his cell to obtain water

---

[4] Plaintiff attempts to dispute that the nurse told him to return to his cell and lie down. Instead, Plaintiff claims that he returned to his cell because he was feeling ill and weak. (Doc. 30 at 4–5.) However, Plaintiff's deposition testimony makes clear that the nurse did instruct him to return to his cell following administration of the medication. (Def's Ex. A at 85.) ("And he came back and that's when he gave me a pill for nausea and a pill for blood pressure medicine and *told me to go back and lay down.*" (emphasis added)). Because this testimony is not inconsistent with Plaintiff's returning to his cell because he felt ill, it is undisputed that the nurse also instructed Plaintiff to return to his cell and lie down.

[5] Generally, inmates at the Greene County Jail are required to leave their cells during the day. (Def's Ex. A at 88.) However, due to Plaintiff's illness, the guards left his cell open and allowed him to return there during the day. (*Id.*)

downstairs. (*Id.*) As he drank water in the facility day use area, he "just blanked out" and fell onto his back. (*Id.*)

Plaintiff regained consciousness shortly after his fall. (Doc. 33 at 3.) He heard other inmates screaming "Man down, man passed out, get help." (*Id.*) He remained on his back in a semi-conscious state for at least thirty minutes. (*Id.*) Finally, paramedics arrived and placed him in an ambulance to be transported to the Greene County Hospital Emergency Room. (*Id.*) En route, Plaintiff overheard the paramedics stating that his current blood pressure was 200/100. (*Id.*)

While Jenkins was still in the Greene County Hospital Emergency Room, Lieutenant Roper of the Greene County Sheriff's Department brought him papers to sign to be released on a signature bond. (Def's Ex. A at 24–25.) After signing the signature bond papers, he checked himself out of the hospital and left with his mother. (*Id.* at 26–27.)

On June 10, 2016, the day after he fell, Plaintiff awoke with severe pain radiating from his neck down to his feet. (Doc. 33 at 3.) He also began to suffer muscle spasms that made it difficult to sleep and chronic and persistent pain in his neck and back. (*Id.* at 3–4.)

On June 27, 2016, he visited Dr. Cole Crutcher, his primary care physician, who examined him and ordered an MRI. (*Id.* at 3.) Dr. Crutcher prescribed narcotics

for Plaintiff's pain and referred him to pain management specialists to treat injuries sustained in the June 9 fall. (*Id.*) On July 8, 2016, Plaintiff received another MRI at St. Vincent's Hospital East in Trussville, Alabama. (*Id.*) On July 10, 2016, according to Plaintiff, Dr. Crutcher informed Plaintiff that the MRI indicated degenerative disc disease, several herniated discs, spinal cord injuries, and muscle, tendon, nerve and ligament damage all as injuries resulting from the fall on June 9. (*Id.* at 4.)[6] Dr. Crutcher referred him to a neurologist for a definitive diagnosis and treatment. (*Id.*) According to Plaintiff, he then "did in fact meet with Dr. Crutcher and receive a diagnosis." (*Id.*)[7] However, the record does not clearly indicate what definitive diagnosis he received.[8]

---

[6] This information arises in the record through Plaintiff's revised affidavit. (Doc. 33 at 4.) In its motion to strike, Defendant argues that Dr. Crutcher's statement regarding the MRI results constitutes inadmissible hearsay. (Doc. 31.) To be sure, Dr. Crutcher's statement is hearsay. *See* Fed. R. Evid. 801(c) (defining "hearsay" as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"). However, a court may properly consider a hearsay statement on summary judgment "if the statement could be reduced to admissible evidence" by "hav[ing] the hearsay declarant testify directly to the matter at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012). Defendant does not argue that Dr. Crutcher would be unable to testify about the MRI results at trial. Therefore, the Court may properly consider Dr. Crutcher's hearsay statement on summary judgment.

[7] It is unclear from Plaintiff's affidavit whether he met with a separate neurologist or whether Dr. Crutcher himself conducted another test and reached a "definitive diagnosis." (*See* doc. 33 at 4.)

[8] Plaintiff's revised affidavit simply notes that he "did in fact meet with Dr. Crutcher and receive a diagnosis." (Doc. 33 at 4.) Thereafter, the affidavit asserts—without reference to Dr. Crutcher or any other medical professional—that Plaintiff has suffered certain symptoms "all of which were a proximate result of the incident occurring on or about June 9, 2016 while in the custody and care of Greene County Jail." (*Id.*) However, the affidavit never clearly asserts what

In August 2018, Plaintiff pled guilty to a domestic violence charge and began serving another period of incarceration in the Greene County Jail. (*Id.* at 69.) On October 8, 2018, he broke his foot when he slipped and fell on some water. (*Id.*) He was then taken to the Greene County Hospital Emergency Room, where, according to Plaintiff, x-rays revealed that he had fractured his foot and had problems with his lower back. (*Id.* at 71.) He received treatment for these injuries at the Greene County Jail and has raised no complaints concerning this medical treatment. (*Id.*)

Plaintiff is currently serving the remainder of his eighteen-month sentence for domestic violence in the Bibb County Correctional Facility, which is a state prison. (*Id.* at 68–69.) He takes Tylenol daily for his foot pain and back pain which resulted from his fall on October 8, 2018. (*Id.* at 73.) His foot remains broken at the time of this action. (*Id.* at 72.) He continues to suffer muscle spasms, chronic and persistent pain in his neck and back, and migraine headaches. (Doc. 33 at 3–4.)

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson*

---

"definitive diagnosis" Dr. Crutcher or any other medical professional provided.

*Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms.*, Inc., 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the

moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. DISCUSSION

### A. DEFENDANT'S MOTION TO STRIKE

Defendant has moved to strike—in whole or in part—Plaintiff's affidavit submitted in opposition to summary judgment. (Doc. 31.) As initially submitted, Plaintiff's affidavit (Pl's Ex. A) is neither signed nor dated and thus fails to comply with 28 U.S.C. § 1746, which provides a template whereby an unsworn declaration under penalty of perjury may be used to support an asserted fact. Barring such an exception, an unsworn statement does not meet the requirements of Federal Rule 56(e) and "cannot be considered by a district court in ruling on a summary judgment motion." *Carr v. Tatngelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003). However, Plaintiff has since filed a corrected affidavit that includes both a signature and a date in compliance with 28 U.S.C. § 1746. (Doc. 33.) Accordingly, Defendant's motion

to strike (doc. 31) the earlier affidavit is due to be denied as moot.[9]

## B. Defendant's Motion for Summary Judgment

Plaintiff brings both federal and state claims arising from the provision of medical care in the Greene County Jail. He first brings a claim under 42 U.S.C. § 1983, alleging that Defendant's failure to provide adequate medical care violated his constitutional rights. He also asserts claims under Alabama law for (1) Negligence; (2) Negligent and/or wanton hiring, training and/or supervision; and (3) Medical negligence pursuant to the Alabama Medical Liability Act ("AMLA"), Ala. Code (1975) § 6-5-480, *et seq.* In fact, Plaintiff's state-law claims for negligence and negligent/wanton hiring both relate to the provision of healthcare and are therefore each considered a part of his AMLA claim. *See Mock v. Allen*, 783 So. 2d 828, 832 (Ala. 2000) ("The AMLA applies '[i]n any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care.'" (quoting Ala. Code (1975) § 6-5-548(a))), *abrogated in part by Ex parte Vanderwall*, 201 So. 3d 525, 538 (Ala. 2015) (clarifying that the AMLA applies where the harm complained of "*occurred because of the provision of medical services*").

---

[9] To the extent that Defendant's motion (doc. 31) also seeks to strike portions of Plaintiff's affidavit as relying on inadmissible hearsay, the motion would still be due to be denied. As explained above, Dr. Crutcher's hearsay statements could be reduced to admissible form at trial and therefore may properly be considered on summary judgment. *See Jones*, 683 F.3d at 1293–94.

1. **§ 1983 CLAIM FOR INADEQUATE MEDICAL TREATMENT**

Before turning to the merits of Plaintiff's § 1983 claim, the Court must first determine whether it is time-barred. The proper statute of limitations for a § 1983 claim is the "forum state's general or residual statute of limitations for personal injury actions." *Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992) (citing *Owens v. Okure*, 488 U.S. 235 (1989)). The cause of action does not accrue until plaintiffs know or should know "(1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). The record indicates that Plaintiff alerted the nurse of his hypertension and prescribed medication on June 2, 2016. Plaintiff did not file the instant action until June 4, 2018, more than two years after he alleges the nurse ignored his requests. (Doc. 1) Therefore, Defendant argues that Plaintiff's § 1983 claim should be dismissed as time-barred. "However, the allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided." *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980).[10] Because Plaintiff did not receive requested medical attention until June 9, 2016, his § 1983 is not time-barred.

---

[10] In *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decision of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

Turning to the merits of Plaintiff's § 1983 claim, Plaintiff has asserted that Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Because Plaintiff had not been convicted of a crime, and was instead a pretrial detainee at the time of his injury, the Fourteenth Amendment's Due Process Clause governs his claim. *See Goebert v. Lee Cty*, 510 F.3d 1312, 1326 (11th Cir. 2007). "However, the standards under the Fourteenth Amendment are identical to those under the Eighth." *Id.*

Deliberate indifference to a pretrial inmate's serious medical needs violates the Fourteenth Amendment's Due Process Clause. *See id.* To prove that her medical treatment violated the Constitution, a pretrial detainee must show (1) that she "had a serious medical need," (2) that a "prison official acted with deliberate indifference to her serious medical need," and (3) that her "injury was caused by the defendant's wrongful conduct." *Id.*

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The parties do not dispute that Plaintiff's hypertension qualifies as a

serious medical need.

The dispute lies in whether Defendant behaved with deliberate indifference towards Plaintiff's hypertension and need for his daily blood pressure medication. To show such deliberate indifference, Plaintiff must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)), *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). "Mere medical malpractice . . . does not constitute deliberate indifference." *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). However, the delay of medical treatment for an inmate may, if significantly prolonged, rise to the level of deliberate indifference. *See McElligott v. Foley*, 182 F.3d 1248, 1258 n.6 (11th Cir. 1999) (holding that a genuine dispute existed as to deliberate indifference where an inmate showed that he "had to wait a week or more in order to receive medical attention" for his significant pain on several occasions).

Moreover, Defendant's role in providing medical treatment to pretrial detainees necessitates that Plaintiff also prove that Defendant's policy or custom caused his injury. A municipality may not be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691

(1978). For a municipality to be held liable under § 1983, a plaintiff must demonstrate that his injury resulted from a "policy or custom" of the municipality. *Id.* at 694. Although Defendant is a private entity, the Eleventh Circuit has held that the requirement of showing a policy or custom applies in "suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates." *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997). Thus, Plaintiff must demonstrate that a "persistent and wide-spread practice" by Defendant caused his injury. *Goebert v. Lee Cty*, 510 F.3d 1312, 1332 (11th Cir. 2007) (quoting *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)). "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the [defendant]." *Craig v. Floyd Cty, Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011).

Plaintiff has not shown that a policy or custom of Defendant caused his injuries. He asserts that "as policy, practice, or custom, ACH and Greene County Jail failed to properly screen [him] and other inmates for illnesses, health issues or serious medical needs upon admitting new inmates to the jail." (Doc. 30 at 17–18.) However, he has not presented evidence that this policy or practice has been employed by Defendant for any other inmates upon entry into the facility. He admits that he is not familiar with any other inmates at the Greene County Jail or whether any of them

entered the facility without going through a medical screening process. Instead, his sole evidence of a failure to screen incoming inmates is that he personally did not go through such a process when first admitted to the Greene County Jail on June 1, 2016. Even assuming the failure to conduct medical screening for incoming inmates amounts to a constitutional violation, Plaintiff's reliance on a single incident involving only himself is insufficient to prove a policy or custom of unconstitutional activity by Defendant. *See Craig*, 643 F.3d at 1312 (holding that evidence of an evaluation of a single detainee by a single nurse was insufficient to prove that a prison had a policy or custom of relying on hospital clearance forms in treating prisoners).[11] Accordingly, summary judgment is due to be granted to Defendant as to this claim.

2. **CLAIM BROUGHT PURSUANT TO ALABAMA LAW**

Having disposed of all pending federal-law claims, the Court now turns to Plaintiff's remaining AMLA claim.[12] Heretofore, the Court has exercised supplemental jurisdiction over this claim based on the Court's original jurisdiction

---

[11] Plaintiff has not expressly argued that the nurse's failure to provide him with blood pressure medication upon request amounted to a policy or custom of Defendant. However, even if the Court reads Plaintiff's briefing to include such an argument, Plaintiff has not provided evidence that Defendant had a policy or custom of ignoring inmates' requests for required medication. First, Plaintiff relies solely upon his own experience with a single nurse employed by Defendant. *See Craig*, 643 F.3d at 1312. Second, Plaintiff's deposition affirmatively shows that the nurse in question provided medication to other inmates during Plaintiff's initial incarceration at Greene County Jail.

[12] As noted above, Plaintiff's other state-law claims for negligence and negligent/wanton hiring are, under Alabama law, a part of his AMLA claim.

over Plaintiff's § 1983 claim. 28 U.S.C. § 1367(a). Where the district court "has dismissed claims over which it has original jurisdiction," the court may decline to exercise supplemental jurisdiction over any remaining claims. 28 U.S.C. § 1367(c). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004).

In granting Defendant's motion for summary judgment in part, the Court dismisses all pending federal-law claims. As a result, there are no remaining claims over which the Court may exercise original jurisdiction. The Court now declines to exercise supplemental jurisdiction over Plaintiff's remaining AMLA claim, pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Court will dismiss that claim without prejudice.

Even if the Court did not now decline to exercise jurisdiction over Plaintiff's remaining AMLA claim, that claim would likely still be due to be dismissed.[13] The Alabama Supreme Court has held that "[i]n a medical-malpractice action, the

---

[13] Although the AMLA claim is due to be dismissed on other grounds, the Court rejects Defendant's argument that it is time-barred. The AMLA requires that a claim must be "must be commenced within two years after the act, omission, or failure giving rise to the claim." Ala. Code (1975) § 6-5-482. However, "[w]hen the wrongful act or omission and the resulting injury do not occur simultaneously," the cause of action accrues at the time of the injury. *Mobile Infirmary v. Delchamps*, 642 So. 2d 954, 958 (Ala. 1994). Here, although the nurse failed to provide Plaintiff's medication beginning on June 2, 2016, Plaintiff's claimed injury occurred on June 9, 2016. He filed this action on June 4, 2018, less than two years following his claimed injury. Therefore, his AMLA claim, like his § 1983 claim, is not time-barred.

plaintiff ordinarily is required to present expert testimony as to the relevant standard of care." *Cobb v. Fisher*, 20 So. 3d 1253, 1257 (Ala. 2009) (quoting *Martin v. Dyas*, 896 So. 2d 436, 441 (Ala. 2004)). Similarly, a plaintiff in a medical malpractice action ordinarily must present expert testimony to establish a causal connection between a breach of the standard of care and the plaintiff's injury. *DCH Healthcare Authority v. Duckworth*, 883 So. 2d 1214, 1217–18 (Ala. 2003). Plaintiff has presented no expert testimony regarding either the standard of care or whether Defendant's alleged breach caused Plaintiff's injury.[14] Therefore, unless an exception applies that would obviate the need for expert testimony, Plaintiff's AMLA claim would be due to be dismissed with prejudice.

Alabama courts have carved out a handful of exceptions to the AMLA's requirement of expert testimony to prove an applicable standard of care in a medical malpractice action. The most pertinent exception in this case is that expert testimony is not necessary to prove the standard of care "where want of skill or lack of care is so apparent . . . as to be understood by a layman, and requires only common

---

[14] Plaintiff's revised affidavit references Dr. Crutcher's hearsay statements regarding the results of Plaintiff's MRI. (Doc. 33 at 4.) The Court's research does not answer whether a medical expert's hearsay statement could satisfy the AMLA's expert requirements at the summary judgment stage. Regardless, Dr. Crutcher's hearsay statements regarding the MRI results do not reveal his professional opinion as to whether Defendant breached the standard of care or whether such a breach proximately caused Plaintiff's injuries. Indeed, Plaintiff's revised affidavit references Dr. Crutcher reaching a "definitive diagnosis" of Plaintiff's injuries, but it does not elaborate on what conclusion Dr. Crutcher reached. (*Id.*)

knowledge and experience to understand it." *Ex parte HealthSouth Corp.*, 851 So. 2d 33, 42 (Ala. 2002) (quoting *Tuscaloosa Orthopedic Appliance Co., Inc. v. Wyatt*, 460 So. 2d 156, 161 (Ala. 1984)); *see also Morgan v. Publix Super Mkts., Inc.*, 138 So. 3d 982, 989 (Ala. 2013) (holding that a pharmacy's filling of a plaintiff's prescription with the wrong medication involved so apparent a lack of skill or care as to obviate the need for expert testimony).[15] The record indicates that a nurse employed by Defendant failed to provide Plaintiff his daily blood pressure medication even after being notified of his medical need. The record further indicates that, after a week had passed and Plaintiff's symptoms had worsened, the nurse provided him with blood pressure medication and instructed him to go lie down in his cell. Although the failure to provide a daily medication for up to a week may present a breach simple enough to be understood by a layperson, the nurse's subsequent actions create ambiguity. Without expert testimony, a layperson may not reliably determine whether the nurse satisfied the applicable standard of care when he finally provided blood pressure medication and advised Plaintiff to go lie down in his cell. Therefore, the AMLA likely requires Plaintiff to produce expert testimony regarding the

---

[15] Alabama courts also recognize an exception "when a plaintiff either relies on 'a recognized standard or authoritative medical text or treatise,' or is himself a qualified medical expert." *HealthSouth Corp.*, 851 So. 2d at 42 (quoting *Anderson v. Ala. Reference Labs.*, 778 So. 2d 806, 811 (Ala. 2000)). Plaintiff has presented no evidence whatsoever indicating that this exception applies.

applicable standard of care in this case. Because he has not done so, this claim would likely be due to be dismissed with prejudice. This inquiry, however, is best decided by an Alabama state court.

Plaintiff's failure to produce expert testimony relating to medical causation is similarly fatal to his AMLA claim. "Unless 'the cause and effect relationship between the breach of the standard of care and the subsequent complication or injury is so readily understood that a layperson can reliably determine the issue of causation,' causation in a medical-malpractice case must be established through expert testimony." *Duckworth*, 883 So. 2d at 1217 (quoting *Cain v. Howorth*, 877 So. 2d 566, 576 (Ala. 2003)). The record includes numerous facts that would prevent a layperson from reliably determining the issue of causation in this case. As noted above, before Plaintiff fell on June 9, 2016, the nurse administered his medication and instructed him to lie down in his cell. Expert testimony is required to make clear to a layperson to what extent Plaintiff's decision to leave his cell contributed to his fall on that day. Moreover, Plaintiff's childhood injury and subsequent fall in October 2018 further complicate the question of which of Plaintiff's injuries, if any, are attributable to his fall on June 9, 2016. As a result, Plaintiff's failure to provide expert testimony regarding medical causation could warrant dismissal of his AMLA claim. As with the inquiry regarding the standard of care, however, this inquiry is best

decided by an Alabama state court.

IV. **Conclusion**

For the foregoing reasons, Defendant's motion to strike (doc. 31) is due to be denied as moot, and its motion for summary judgment (doc. 25) is due to be granted in part. The § 1983 claim is due to be dismissed with prejudice, while the state-law causes of action are due to be dismissed without prejudice so that they may be, if appropriate, considered by a state court. In the event that Plaintiff seeks to refile this action in a state court, the Court directs the parties to 28 U.S.C. § 1367(d), which clarifies the period of limitations that will apply to Plaintiff's remaining state-law claims. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on February 13, 2020.

L. Scott Coogler
United States District Judge

199455